Slip-Op. 09-33

UNITED STATES COURT OF INTERNATIONAL TRADE

---

|  | : |  |
| --- | --- | --- |
| GLOBAL SOURCING GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Judith M. Barzilay, Judge |
| v. | : | Court No. 05-00405 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**<u>OPINION</u>**

[Plaintiff's Motion for Summary Judgment is granted; Defendant's Motion for Summary Judgment is denied in part and granted in part.]

Dated: April 23, 2009

*Fitch, King and Caffentzis* (*Peter J. Fitch*), for Plaintiff Global Sourcing Group, Inc.

*Michael F. Hertz*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Barbara S. Williams*, Attorney-in-Charge, (*Mikki Cottet*), Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *Sheryl A. French*, Attorney, Of Counsel, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, for Defendant United States.

**BARZILAY, JUDGE:**

Plaintiff Global Sourcing Group, Inc. ("Global") moves for summary judgment, arguing

that its imported merchandise, described by both parties as "binders," was not properly classified

by U.S. Customs and Border Protection ("Customs"). Defendant United States (the

"Government"), contests the court's jurisdiction over two specific binder models, asking the

court specifically to (1) dismiss part of the action for lack of subject matter jurisdiction, (2) deny

Global's motion for summary judgment, and (3) set the balance of the action for trial. In the

alternative, the Government requests that the court deny Global's motion in its entirety.  Guided

by the Federal Circuit and its reasoning in *Avenues in Leather, Inc. v. United States*, 423 F.3d

1326, 1333-34 (Fed. Cir. 2005), the court grants Plaintiff's Motion for Summary Judgment.  The

court denies Defendant's Motion for Summary Judgment in part and grants in part, for reasons

explained herein.

## I. Background

The present action involves nine entries,[1] comprised of nineteen different binder models,[2]

made through the Port of New York (JFK) on or between March 25, 2003 and February 19, 2004.

*See* Summons.  Though differing somewhat in size and shape, the binders are made of a rigid

paperboard core (*i.e.*, spine, as well as front and back components), one or more layers of foam

padding, and an outer covering of either vinyl or textile fabric.[3]  Pl. Br. 1; Def. Br. 2.

Specifically, the binders exhibit the following characteristics: a permanently affixed ring binding

mechanism having six or seven rings; pen loops and various slots on the inside of the binders for

business cards; and flat, non-expandable pockets on the inside (and in some instances, on the

---

[1] Entry Nos. W90-0505549-1, W90-0505212-6, W90-0505925-3, W90-0505235-7, W90-0506337-1, W90-0504917-1, W90-0508118-2, W90-0508119-0, and W90-0508509-2.  *See* Summons.

[2] 10171,10226, 10301, 10305, 11497, 12117, 18685, 18686, 19688, 18689, 18690, 18692, 19692, 24798, 24799, 26326, 26327, 28472, and 28473.  Pl. Br. Tab B (Index to Pl. Collective Ex. 2).

[3] Although two of the binder models are comprised of leather to some degree, Pl. Br. Ex. 2-Q & 2-R, it appears that the binders are covered primarily in textile.  The minimal presence of leather on two of the binders, therefore, does not contradict the parties' assertions that the binders have an outer covering of vinyl or textile fabric.  *See Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (emphasizing that "the merchandise itself is often a potent witness in classification cases").

outside) of the binder where some separate sheets of paper may be placed.  Pl. Statement of

Material Facts ¶ 6; Pl. Br. Tab A, Wise Decl. ¶ 2.  Though dedicated to the organization and use

of stationery items – six and seven-hole sheets of paper, or paper inserts such as note pads,

calendars, diaries, agendas, and address books – the binders are also designed to hold non-paper

products like pens, pencils, plastic page finders, business and credit cards, calculators and other

small objects.  Pl. Statement of Material Facts ¶ 7; Pl. Br. Tab A, Wise Decl. ¶ 3; Def. Resp. to

Pl. Statement of Material Facts ¶ 7.  At the time of importation, while nine models contained

plastic inserts used as dividers, none of the binders included any paper or paper inserts.  *See* Pl.

Br. Ex. 2-A to 2-D, 2-F to 2-H, 2-Q & 2-R; Def. Resp. to Pl. Statement of Material Facts ¶ 8.

Following its standard practice, Customs classified and liquidated the binders based on

their outer material, with the vinyl-covered binders classified under Heading 3926[4] (subheadings

3926.10.00 and 3926.90.98, at a duty rate of 5.3% *ad valorem*) and the textile-covered binders

under Heading 6307[5] (subheading 6307.90.98, at a duty rate of 7% *ad valorem*) of the

---

[4] Heading 3926 provides in pertinent part:

| 3926 | Other articles of plastics and articles of other materials of headings 3901 to 3914: |
|---|---|
| 3926.10.00 | Office or school supplies. |
| . . . . | |
| 3926.90.98 | Other. |

[5] Chapter 63 covers other made up textile articles, with Heading 6307 providing in pertinent part:

| 6307 | Other made up articles, including dress patterns: |
|---|---|
| . . . . | |
| 6307.90.98 | Other. |

Harmonized Tariff Schedule of the United States ("HTSUS").[6]  Compl. ¶¶ 5-6; *see Binders*

*Wholly or Mainly Covered with Leather, Sheeting of plastics, etc.; Imported Without Stationery*

*Goods; Headings 4205 and 3926*, HQ 967329 (Nov. 15, 2004), Def. Br. Ex. A, Attach. 8 ("*HQ*

*967329*"); *Classification of Notepad Holders; Planners; Organizers; Diaries; Paper Inserts*, HQ

959328 (Apr. 3, 1997), Def. Br. Ex. B ("*HQ 959328*").  Global argues, in contrast, that the more

appropriate classification for the subject merchandise is "binders" under Heading 4820[7] – and

more specifically, subheading 4820.30.00 – duty-free.[8]  Pl. Br. 3.

## II. Subject Matter Jurisdiction and Standard of Review

The court has exclusive jurisdiction over all civil actions commenced under § 515 of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1515, to contest protests denied by Customs.  *See* 28

U.S.C. § 1581(a).

Summary judgment is appropriate "if the pleadings, discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  USCIT R. 56(c).  The court,

---

[6] All citations to the HTSUS refer to the 2003 version, and where appropriate, the 2004 version, as determined by the merchandise's date of importation.

[7] Heading 4820 provides in pertinent part:

| 4820 | Registers, account books, notebooks, order books, receipt books . . . *binders* (loose-leaf or other) . . . of paper or paperboard: |
|---|---|
| . . . . | |
| 4820.30.00 | Binders (other than book covers), folders and file covers. |
| 4820.30.00.20 | Looseleaf binders. |

[8] Although Global's complaint argued for the alternative classification of the subject merchandise under various headings, the court deems these claims abandoned given Global's exclusive focus during briefing on classification under Heading 4820.  *See generally* Pl. Br.

when determining the proper classification of imported merchandise, applies a two-step analysis

whereby it "(1) ascertain[s] the proper meaning of the specific terms in the tariff provision; and

[then] (2) determin[es] whether the merchandise at issue comes within the description of such

terms as a properly construed." *Pillowtex Corp. v. Unites States*, 171 F.3d 1370, 1373 (Fed. Cir.

1999) (citing *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed Cir. 1998)).   The

first step in the analysis is a question of law and the second is a question of fact, both of which

are determined *de novo.   See Pillowtex Corp.*, 171 F.3d at 1373; *Rollerblade, Inc. v. United

States*, 282 F.3d 1349, 1351 (Fed. Cir. 2002).   A classification by Customs is presumed to be

correct under 28 U.S.C. § 2639(a)(1) and the court affords deference to the classification in

accordance with *Skidmore v. Swift & Co.   See* 323 U.S. 134, 140 (1944) (holding that the weight

of a classification determination depends upon "all those factors which give it power to

persuade"); *Rollerblade, Inc.*, 282 F.3d at 1352 (citing *United States v. Mead Corp.*, 533 U.S.

218, 218 (2001) ("*Mead Corp. I*"); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.

Cir. 1994)).   Parties challenging decisions by Customs have the burden of proof in overcoming

the presumption of correctness.   *See* § 2639(a)(1).

### III. Discussion

**A. Subject Matter Jurisdiction Over Model Numbers 18687 and 28471**

Prior to addressing the propriety of Customs's classification, the court must dispense with

a jurisdiction issue.   The Government moves, pursuant to USCIT R. 12(b)(1), for dismissal of the

part of the action related to the classification of model numbers 18687 and 28471 (Entry Nos.

W90-0506822-1 and W90-0508118-2, respectively).   Def. Br. 10.   Specifically, the Government

argues that the court lacks subject matter jurisdiction over these entries under § 1581(a) because (1) Global did not protest the classification and liquidation of model numbers 18687 and 28471, and (2) the entry under which model number 28471 was imported is not included on the summons of this action. Def. Br. 13.

Importers may challenge a classification ruling by filing a "protest" with Customs. 19 U.S.C. §§ 1514(a), 1515. "A protest may challenge the classification of a single entry of merchandise, or encompass a number of entries 'if all such entries involve the same protesting party, and if the same category of merchandise and a decision or decisions common to all entries are the subject of the protest.'" *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1314 (Fed. Cir. 2006) (quoting 19 C.F.R. § 174.13(b)).

The importer may challenge the denial of a protest by filing suit in the U.S. Court of International Trade ("CIT"). § 1581(a). "The statutory prerequisites to filing suit are that [(1)] Customs has denied the protest containing the entry; [(2)] the importer paid all liquidated duties, charges, or exactions for the entry; and [(3)] the importer filed *a summons listing either the protest or entry number* within 180 days of the denial of the protest." *Int'l Custom Prods., Inc. v. United States*, Slip Op. 09-08, 2009 WL 205860, at *3 (Jan. 29, 2009) (quotations & citations omitted); *see* 28 U.S.C. §§ 2636(a), 2637 (emphasis added); *DaimlerChrysler Corp.* , 442 F.3d at 1313.

This Court has held that "[t]he initial pleading in an action under [§ 1581(a)] is a summons." *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006) (citing USCIT R. 3(a)(1); *DaimlerChrysler Corp.*, 442 F.3d at 1318).

Further, "[t]he summons must establish the [C]ourt's jurisdiction, and because each protest forms the basis for a separate cause of action, the summons must establish the [CIT's] jurisdiction as to each protest." *H & H Wholesale Serv., Inc.*, 30 CIT at 691, 437 F. Supp. 2d at 1339 (quotations, brackets & citation omitted).

In this case, the summons filed by Global included Protest No. 4701-04-100708 listing six entries,[9] and Protest No. 4701-05-100114, listing three entries.[10] Global, however, did not specifically enumerate Entry No. W90-0506822-1 – the only entry which contained model number 18687 – in the summons. As an initial matter, Global's failure to include Entry No. W90-0506822-1 in the summons thereby eliminated the entry from the jurisdictional reach of the Court. Moreover, even assuming that jurisdiction could be established over Entry W90-0506822-1 as a result of Global's inclusion of Protest No. 4701-04-100708 in its summons, the court would still lack jurisdiction over the entry in question. Although that protest included Entry No. W90-0506882 when *originally* filed, the protest was subsequently modified and the entry was stricken. *See* Protest No. 4701-04-100708 Ex 1. Therefore, because Entry No. W90-0506882-1 does not constitute part of Protest No. 4701-04-100708, and because model 18687 is not identified as being a part of any other protest or entry listed on the summons, Global did not challenge the classification and liquidation of model 18687, thereby failing to invoke the Court's jurisdiction under § 1581(a). *See* Protest No. 4710-04-100708 Ex. 3 at 2; Protest No. 4701-05-100114 Ex.1; *Int'l Custom Prods., Inc.*, 2009 WL 205860, at *3.

---

[9] W90-0505549-1, W90-0505212-6, W90-0505925-3, W90-0505235-7, W90-0506337-1, and W90-0504917-1.

[10] W90-0508118-2, W90-0509119-0, W90-0508509-2.

Similarly, the court also lacks subject matter jurisdiction over model 28471, which formed part of Entry No. W90-0508118-2. Although Global challenged said entry as part of Protest No. 4701-05-100114 and specifically enumerated it in the summons, Global did not actually contest the classification or liquidation of model number 28471 as part of the protest. *See* Protest No. 4701-05-100114 Ex. 2 at 2-3. Accordingly, Global failed to challenge Customs's determination regarding model 28471 and, therefore, did not meet the statutory requirements needed to establish the Court's jurisdiction. *See Int'l Custom Prods., Inc.*, 2009 WL 205860, at *3.

Based on the aforementioned factors, the court finds that it lacks subject matter jurisdiction over models 18687 and 28471 and dismisses all claims relating to these two models.

## B. HTSUS Classification

### 1. General Rules of Interpretation

The "proper classification of merchandise entering the United States is directed by the General Rules of Interpretation [("GRIs")] of the HTSUS and the Additional United States Rules of Interpretation." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Pursuant to GRI 1, "[t]he titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to [GRIs 2 through 6]." GRI 1; *see Orlando Food Corp.*, 140 F.3d at 1440. The court may also refer to the explanatory notes ("EN"), which though not legally

binding or dispositive, are persuasive authority in clarifying provisions within the HTSUS.[11]  *See*

*Mita Copystar Am.*, 21 F.3d at 1082.

### 2. GRI 1 Controls the Classification of the Subject Merchandise

The court now turns its attention to the issue of whether Global has met its burden of

demonstrating that the Customs classification decision is incorrect.  If so, it is the court's duty to

determine the correct classification.  *Jarvis Clark Co. v. United States*, 733 F.2d 873, 876 (Fed.

Cir. 1984).  Global argues that Customs erred in its classification determination, and that rather

than Headings 3926 and 6307, the goods are more appropriately classifiable under Heading 4820.

In particular, Global argues that the merchandise are "binders" made "of paper or paperboard"

and that they therefore fall within the *eo nomine* provision for such articles, *i.e.*, subheading

4820.30.00.[12]  Pl. Br. 3.  Acknowledging that the binders are composite goods consisting of more

than one material, Global alternately proposes that the binders' rigid paperboard frame and spine

supply the essential character of the subject merchandise because they "are responsible for (and

therefore indispensable to) the structural integrity of the binders."  Pl. Br. 9.  Although "binder"

is not defined in the HTSUS or its legislative history, the court considers a term's common

meaning to be the correct meaning.  *See Pillowtex Corp.*, 171 F.3d at 1374 ("When a tariff term

is not defined in the HTSUS or its legislative history, the term's correct meaning is its common

---

[11]  The ENs for both the GRIs and the Headings are published by the World Customs
Organization in the *Harmonized Commodity Description and Coding System Explanatory Notes*
("*Explanatory Notes*") (3rd ed. 2002).

[12]  "[A]n *eo nomine* provision is one 'in which an item is identified by name.'"  *Pomeroy
Collection, Ltd. v. United States*, 32 CIT __ , 559 F. Supp. 2d 1374, 1394 n.23 (2008) (citation
omitted).

meaning."). For guidance on the common meaning of "binder," the court looks to the dictionary definition of the term. A "binder" is not only "something used to bind," but it can also be "a notebook cover with rings or clamps for holding paper," or consist of "a [usually] detachable cover (as for holding sheets of paper)." *The American Heritage College Dictionary* 142 (4th ed. 2007); *Webster's New Collegiate Dictionary* 151 (9th ed. 1988). Because Global's imported merchandise indisputably meets the definition of a binder as quoted above, and is of paper or paperboard,[13] the court holds that the merchandise is properly classified under HTSUS Heading 4820. The court, then, rejects the Government's arguments that (1) the Customs classification rulings here are entitled to deference; (2) the subject merchandise is not "of paperboard;" (3) an essential character analysis under GRI 3(b) is required because the subject merchandise is a composite good; and (4) the essential character of the binders is provided by the material from which the exterior is comprised, *i.e.*, vinyl or textile. Def. Br. 17-18, 21.

**3. Classification of the Subject Merchandise under Heading 4820 is Mandated by the Federal Circuit Decision in *Avenues in Leather***

Although the parties initially argued that the court should focus its inquiry on determining which of the binder components (*i.e.*, the paperboard inserts or the vinyl/textile covering) provide the essential character of the subject merchandise, the court believes that such an analysis is premature and that, following the teaching of *Orlando Foods Corp.*, its analysis must necessarily begin with whether the binders are *prima facie* classifiable pursuant to GRI 1. *See* 140 F.3d at 1440. In addition, established precedent requires that the GRIs be applied in numerical order. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

---

[13] *See* discussion *infra*, Sections III(B)(4)-(5).

The court is also guided by the decision in *Avenues in Leather*, where the Federal Circuit reviewed the classification of goods substantially similar to the subject merchandise here. 423 F.3d 1326. In that case, the Federal Circuit reviewed the classification of "Calcu-Folios" which "measure approximately 13.5 inches tall by 11.5 inches wide by 1.5 inches deep when closed, are zippered on three sides with an interior sleeve, possess one exterior open flat pocket and a number of small interior pockets, have a padded carrying handle fitted to the exterior spine, are constructed of paperboard covered with plastic foam and a vinyl/plastic exterior and interior, contain a solar-powered calculator, and have an interior three-ring metal binder permanently affixed to the spine." *Id.* at 1328.[14]

After disposing of a corollary issue, the Federal Circuit addressed "whether the properly-interpreted scope of HTSUS Heading 4202 or HTSUS Heading 4820 encompasses Avenues' imported folios." *Id.* at 1331. The court first determined that the CIT "correctly concluded that the Calcu-Folios are neither classifiable, *eo nomine*, as a form of briefcase, nor, under an *ejusdem generis* analysis, as a 'similar container,' under Heading 4202."[15] *Id.* at 1333. Turning to the issue of whether Heading 4820 was the more appropriate classification, the Federal Circuit acknowledged that the CIT "based its conclusion in part on the presence of the article's structural components, which include a memorandum pad, a three-ring binder, and a paperboard core and

---

[14] The Calcu-Folios in *Avenues in Leather* also included a three-hole memorandum pad. *See Avenues in Leather*, 423 F.3d at 1334; *Avenues in Leather, Inc. v. Unites States*, 28 CIT 565, 566 n.1 (2004) (not reported in F. Supp.).

[15] Distinct from an *eo nomine* provisio, an *ejusdem generis* provision "requires that . . . the [subject] merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase [in a heading]." *Avenues in Leather*, 423 F.3d at 1332.

spine," and ultimately found that the memorandum pad and the core "are clearly of paper or

paperboard." *Id*. at 1334.  The court also explained that

> [a]part from the memorandum pad and the binder, which appear as named
> exemplars under Heading 4820, most of the remaining features of the Calcu-
> Folios pertain to use with writing or written documents.  For example, the pen
> sleeves are used to hold pens, and the limited capacity of the cover and the
> pockets restrict use of the Calcu-Folios to holding or organizing flat items such as
> papers or folders.
> . . . The ENs [to Heading 4820] further provide that these goods may be
> bound with materials other than paper, such as leather, plastics, or textile
> materials, and may have reinforcements or fittings of metals.  Although the ENs
> are not legally binding or dispositive, they may be consulted for guidance and are
> generally indicative of the proper interpretation of the various HTSUS provisions.

*Id.*  After reviewing the record, the Federal Circuit held that "the imported item as a whole

exhibits characteristics of an article of stationery, of paper or paperboard, and shares the common

characteristics of a memorandum pad and a letter pad.  Accordingly, *applying GRI 1*, we hold

that the Calcu-Folios are classifiable under Subheading 4820.10.20[.]20."[16]  *Id.* (emphasis

added).  Further, the court emphasized that because "the merchandise at issue is *properly*

*classifiable under GRI 1*, resort to an analysis under GRI 3(b) is unnecessary."  *Id.* at 1334

(emphasis added).

---

[16] Subheading 4820.10.20.20 encompasses "[M]emorandum pads, letter pads and similar articles."

Global contends that because the subject merchandise is "virtually the same" as that in

*Avenues in Leather* (but for the absence of the memorandum pad, solar-powered calculator, and

padded carrying handle),[17] the Federal Circuit's analysis applies equally in this case.  Pl.

Supplemental Br. 4.  In addition, Global emphasizes that in *Avenues in Leather* the Federal

Circuit employed GRI 1 even where an *eo nomine* provision addresses, in part, constituent

materials.  Pl. Supplemental Br. 1-4.  Accordingly, a GRI 3(b) analysis is not necessary or proper,

"notwithstanding the fact that classification under Heading 4820 is dependent, in part, upon

material."  Pl. Supplemental Br. 4.  The Government, however, argues that *Avenues of Leather*

"is of little import" because the court employed an essential character analysis pursuant to the

*ejusdem generis* rule of statutory construction rather than the analysis "mandated by the terms of

the competing headings and application of the GRIs."  Def. Supplemental Br. 1, 4.  The

Government instead suggests that *Pillowtex Corp. v. United States*, 171 F.3d 1370 (Fed. Cir.

1999), is the more instructive decision for understanding the proper application of the GRIs.

Def. Supplemental Br. 4.[18]     In the alternative, the Government claims that Heading 4820 is a

"limited *eo nomine* provision" which "require[s] that the binders classifiable within its scope be

'of paper or paperboard,'" and that an essential character analysis is required because all of the

---

[17] Notwithstanding the general absence of handles among the samples provided by
Global, Model No. 18685 exhibits retractable handles.  Pl. Br. Ex. 2-J.

[18] In *Pillowtex Corp.*, the court sought to classify the comforters under one of two
subheadings (9404.90.80 or 9404.90.90).  *See Pillowtex Corp.*, 171 F.3d at 1374-75.  Because
the court found that the merchandise was *prima facie* classifiable under both subheadings, the
court proceeded to a GRI 3(b) analysis.  *See id.* at 1375-76.

headings proposed by the parties contain a constituent components provision.  Def. Supplemental

Br. 8.

    The court finds little to distinguish *Avenues in Leather* from the case at hand.  First, while

it is true that the Federal Circuit employed an *ejusdem generis* method of construction, it did so

only to explain the phrase "article of stationery" and then proceeded to apply GRI 1 to determine

whether the merchandise was classifiable under Heading 4820.  *See Avenues in Leather*, 423 F.

3d at 1334.  Second, *Pillowtex Corp.*, where the Federal Circuit weighed two equally specific

subheadings rather than headings with different levels of specificity, is distinguishable from the

case at hand.  *See* 171 F.3d at 1376 (stating that "the subheadings are to be regarded as equally

specific."); GRI 3(a) ("[t]he heading which provides the most specific description shall be

preferred to headings providing a more general description.").  Third, the Calcu-Folios in

*Avenues in Leather* and the merchandise in this case are strikingly similar.  In particular, the

Calcu-Folios and the subject merchandise both contain cores and spines constructed of paper or

paperboard; a layer of plastic foam; coverings of vinyl plastic exterior;[19] metal binder

mechanisms permanently affixed to the spine; interior sleeves that accommodate a writing pad or

other flat items; zippers on three sides; and padded handles.[20]  Pl. Br. Ex. 2-A to 2-R; Def. Br.

Attach. 8 at 1-2; *see Avenues in Leather*, 423 F.3d at 1328.  Based on these three considerations,

---

    [19] That some of the binders at issue here have textile exteriors is not so significant as to
distinguish the Calcu-Folios in *Avenues in Leather* from the subject merchandise for
classification purposes.

    [20] *See supra* n.17.

the court finds that the approach employed by the Federal Circuit in *Avenues in Leather* serves as

precedential guidance in the classification of the subject merchandise here.

### 4. The ENs Also Support Classification under Heading 4820

The starting point of a GRI 1 analysis is for the court to examine whether the articles at

issue are *prima facie* classifiable under a particular HTSUS heading.  Here, the Government's

classification has no merit when GRI 1 is given its full effect.  Indeed, when the text of the

headings are read in harmony with the ENs, it is clear that the subject merchandise is most

appropriately classifiable under Heading 4820.  Although ENs are not legally binding, they are

generally indicative of the proper interpretation of the HTSUS provisions.  *See Avenues in*

*Leather*, 423 F.3d at 1334 (quoting *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234

F.3d 1348, 1352 (Fed Cir. 2000); *see Agfa Corp. v. United States*, 520 F.3d 1326, 1329-30 (Fed.

Cir. 2008).  In relevant part, EN 48.20 explicitly states the heading includes "binders designed

for holding loose sheets, magazines, or the like ([*e.g.*], clip binders, spring binders, screw

binders, ring binders), and folders, file covers, files (*other than* box files) and portfolios," and

that "[t]he goods of this heading *may be bound with materials other than paper* ([*e.g.*], leather,

plastics or textile material) and have reinforcements or fittings of metal, plastics, etc."[21]  EN

48.20 (second emphasis added).  The ENs to Headings 3926 and 6307 add further guidance as

well, specifically explaining that said headings cover articles that are not specifically included

elsewhere.  *See* EN 39.26 ("This heading covers articles, *not elsewhere specified or included*, of

plastics . . . .") (emphasis added); EN 63.07 ("This heading covers made up articles of any textile

---

[21] Crucially, EN 48.20 does not contain any language requiring that the merchandise be entirely or principally comprised of paperboard.

material which are *not included* more specifically in other headings of Section XI or elsewhere in

the Nomenclature.").  The ENs therefore (1) make clear that the plastic and vinyl materials do not

disqualify the subject merchandise from classification under Heading 4820, (2) emphasize that

the classification of a good under Heading 4820 depends on whether that good is comprised of

paper or paperboard, and (3) state that merchandise specifically provided for elsewhere is not

covered by Headings 3926 and 6307.  Accordingly, there is no need for the court to go beyond

GRI 1 in its analysis.

### 5. The Court Need Not Defer to Customs's Classification

While the court may accord deference to a Customs classification determination, such

rulings are only afforded a measure of deference proportional to their power to persuade.[22]  *See*

*Mead Corp. I*, 533 U.S. at 234-35; *Skidmore*, 323 U.S. at 140.  Further, while this court

recognizes that Customs's "relative expertise in administering the tariff statute often lends further

persuasiveness to a classification ruling," the court is also aware of "its independent

responsibility to decide the legal issue regarding the proper meaning and scope of the HTSUS

terms."  *Mead Corp. II*, 283 F.3d at 1346 (citing *Rocknel Fastener, Inc. v. United States*, 267

F.3d 1354, 1358 (Fed. Cir. 2001)).

In denying Global's Protest Nos. 4701-04-100708 and 4701-05-100114, Customs

explicitly relied on analyses it employed in two earlier ruling letters that addressed merchandise

---

[22] As established in *Skidmore*, "a classification ruling receives a measure of deference
proportional to its 'power to persuade,'" which "depends on the thoroughness evident in the
classification ruling, the validity of its reasoning, its consistency with earlier and later
pronouncements, the formality attendant the particular ruling, and all those factors that give it
power to persuade."  *Mead Corp. v. United States*, 283 F.3d 1342,1346 (Fed. Cir. 2002)
(footnote & citations omitted) ("*Mead Corp. II*").

similar to that at issue here.  *See HQ 967329*; *HQ 959328*.  Customs denied Protest No. 4701-04-

100708, explaining that the "[o]riginal Customs decision [was] reviewed and found to be

correct."  Protest No. 4701-04-100708 at 1.  Similarly, Customs denied Protest No. 4701-05-

100114 and explained that "[a]s per HQ 967329[,] PU and PVC covered binders are classifiable

as [HTSUS] 3926.10.0000/5.3%.  As per HQ 959328[,] binders covered with textile materials

are classified as 6307.90.9989/7%."  Protest No. 4701-05-100114 at 1.

     The court need not give deference to Customs's classification of the subject merchandise

under Headings 3926 and 6307 because its justifications are unpersuasive in light of its reliance

on *HQ 967329* and *HQ 959328* – which are themselves riddled with erroneous assumptions,

inconsistent statements, and seemingly contradictory conclusions – and its own inconsistent

application of the GRIs when classifying composite goods.

     In *HQ 967329*, for example, there appear to be at least four problems.  First, Customs

found that a product similar to the subject merchandise was not a binder made of paper or

paperboard, because "the stiffeners would not appear able to form a binder or any other article of

stationery, and would amount only to some unconnected paperboard rectangles" if separated

from the non-paperboard component materials.  *HQ 967329* at 3.  This conclusion, rests on two

implicit assumptions, namely that (1) unconnected paperboard stiffeners, when removed from the

subject merchandise's other constituent components, do not themselves form a "binder" under

the meaning of Heading 4820, and (2) the non-paperboard materials comprising the subject

merchandise, *i.e.*, the vinyl or textile covers, foam padding, and ring binding mechanism, are

alone sufficient to form a "binder" under the meaning of Heading 4820.[23]  It is clear, however, that the absence of paperboard stiffeners from a good of this kind would necessarily preclude it from being classified as a "binder" of paper or paperboard.  Further, as a notebook cover, a binder is an object that "*covers* or is laid, placed, or spread over or upon something else." *The American Heritage College Dictionary* 329 (4th ed. 2007) (emphasis added); *see* discussion in Section III(B)(2).  The verb "to cover," in turn, means to "to protect or shield from harm, loss, or danger." *American Heritage College Dictionary* 329 (4th ed. 2007).  A binder should, therefore, not only hold papers together by means of rings or clamps, but also protect the contents placed therein from damage due to creases and folds.  Accordingly, because Customs incorrectly assumes that the non-paperboard materials in these articles can function as a binder alone, failing to recognize the essential role that the paperboard stiffeners play in carrying out the intended purpose of the merchandise, *HQ 967329* is unpersuasive.

Second, Customs's determination is problematic because it acknowledges the distinct purposes of the binder's various components, and in so doing, reveals the critical role that the paperboard inserts play in achieving the binder's intended use.  Crucially, the paperboard inserts "allow[] each binder to retain its shape," while it is the non-paperboard materials "which

---

[23] In her Declaration, Joan Mazzola, a National Import Specialist who assisted in the preparation of *HQ 967329*, stated that "the plastic and textile cover materials are themselves of sufficient gauge to maintain the shape and functionality of the binders.  Although the form would be less stiff without the paperboard (cardboard) inserts, in my opinion, the product would maintain the essence of its shape and functionality . . . ."  Def. Br. Ex. A, Decl. of Joan Mazzola ¶¶ 1, 9, 22.  The court notes that Global's Ex. 5 strongly refutes this opinion.  *See* Pl. Br. Ex. 5; *Simod Am. Corp.*, 872 F.2d at 1578.  In any event, Customs is required to classify merchandise in its "condition as imported," not as modified by Customs in an effort to support a doubtful classification.  *See Gen. Elec. Co.-Med. Sys. Group. v. United States*, 247 F.3d 1231, 1235 (Fed. Cir. 2001) (citing *Rollerblade, Inc. v. United States*, 112 F.3d 481, 487 (Fed. Cir. 1997)).

additionally provide color, texture, aesthetic appeal, etc. to the binders." *HQ 967329* at 3.  That

Customs implicitly ascribes greater importance to the materials that provide general aesthetic

appeal, rather than to the paperboard inserts, which provide structure, is incongruous.  Further,

Customs's own use of the word "additionally" suggests that the purpose of the non-paperboard

components is different, if not collateral to, the intended function of the binder.

Third, the court is also concerned with Customs's analysis of the term "bound" as it

appears in the EN 48.20 and its subsequent use in its classification of the subject merchandise.[24]

*See id.*  After noting that the HTSUS does not define the term "bound" and dismissing the

Federal Circuit's opinion in *Mead Corp. II* as irrelevant, Customs relied on a dictionary

definition to construe "bound" as "fastened by or as if by a band."[25]  *HQ 967329* at 3; *see Mead*

*Corp. II*, 283 F.3d at 1349-50.  Applying this definition, Customs subsequently stated:

> [t]he binders are covered by materials other than paper or paperboard, but are not
> "bound" by such materials.  We therefore find that this EN relates directly to the
> purpose for which the subject binders are designed, [*i.e.*], for holding, fastening,
> or securing goods of the heading by means of the metal rings with which each is
> fitted.

*HQ 967329* at 3.  In other words, Customs determined that the binders in *HQ 967329* were not

fastened by leather, plastic or textile, and did not hold or secure the contents by means of non-

---

[24] In relevant part, the EN states that the "goods of this heading may be bound with materials other than paper ([*e.g.*], leather, plastics, or textile material) and have reinforcements or fittings of metal, plastics, etc."  EN 48.20.

[25] Customs examined the Federal Circuit's decision in *Mead Corp. II*, where the court concluded that "'bound,' when used with reference to books as in subheading 4820.10.20, means permanently secured or fastened."  *Mead Corp. II*, 283 F.3d at 1349.  Customs appropriately concluded that the "binders at issue are non-book articles," and declined to adopt the definition of the term "bound" as used in *Mead Corp. II* for purposes of EN 48.20.  *HQ 967329* at 3.

paper materials.  However, earlier in its own description of the merchandise under review in *HQ 967329*, Customs stated that two of the binders – identified as SKU 097B/1 and 143 A/1 – could be "secured in the closed position" by either a strap with a snap tab enclosure or a zipper closure. *HQ 967329* at 1-2.  Presumably, straps with snap tabs and zippers are made of materials other than paper or paperboard.  As such, Customs's determination that the binders fell outside Heading 4820 is both illogical and unpersuasive given that it claims, on the one hand, that the binders are not "bound" by the non-paperboard materials, while, on the other, implying that the binders are "secured in the closed position" by materials that are necessarily comprised of non-paperboard components.  Moreover, the outright application of the reasoning in *HQ 967329* to this case is questionable, considering that all but three of the binder samples (Pl. Br. Ex. 2-B, 2-C & 2-G) are fastened by either snap closures or zippers that are made from materials other than paper or paperboard.  Thus, a logical application of Customs's ruling in *HQ 967329*, which defined the term "bound" as it appears in EN 48.20, would be to find that the subject merchandise is in fact classifiable under Heading 4820, standing in contrast to its classification of the merchandise under Headings 3926 and 6307.

Fourth, beyond the apparent inconsistency discussed above, Customs's limited analysis is also problematic because its reading of the term "bound" is so restricted that it fails to consider any other relevant definitions.  *Id* at 3.  For example, other relevant uses of the term include "[e]quipped with a cover or binding," *The American Heritage College Dictionary* 169 (4th ed. 2007), "secured to its covers by cords or tapes" and "cased in," *Webster's New Third Int'l Dictionary* 260 (1993), and "secured to the covers by cords, tapes, or glue," *Webster's Ninth New*

*Collegiate Dictionary* 171 (1988).[26]  That there is one definition out of many that may logically

lead to Customs's present conclusion does not mean that other relevant definitions and

interpretations should not be addressed.  Customs utterly fails to give any reasons in its ruling for

rejecting any alternative definitions.  Indeed, adopting any of these alternative definitions would

result in an interpretation of the EN as allowing for (1) a cover or binding made with non-

paperboard materials, or (2) leather, plastic, or textile to be secured to the paperboard core covers

by cords, tapes, or glue.  Such constructions would in turn lead to a different conclusion than that

reached by Customs, namely that the subject merchandise is classifiable under Heading 4820.

Thus, Customs's conclusory statement that one definition of the term "bound" should be favored

over another – without any explanation – is not sufficiently persuasive for this court to afford

deference under *Skidmore*.

  The court also reads *HQ 959328* as marred by an internal inconsistency, namely

Customs's method of classifying goods based on whether binders are imported with or without

their respective paper inserts.  *See* Def. Br. Ex. B.  In *HQ 959328*, Customs examined two styles

of "planners and notepad holders," and addressed their classifications based on the presence or

absence of paper inserts.  HQ 959328 at 2.  Customs states that its general practice is to classify

binders/folders under Heading 4820 when imported *with* their respective paper inserts (calendar,

daily planner, address book).  *Id.* at 3.  In contrast, where binders are imported *without* inserts,

Customs classifies them under 6307, the provision for "other made up articles, including dress

---

[26] The court recognizes that some of these definitions may relate primarily to "books," but nevertheless considers them relevant to an analysis aiming to identify the meaning of the term "bound".

patterns." *Id.* at 4.  Customs, however, provided no explanation in *HQ 959328* for why the

presence or absence of the inserts places the goods inside or outside the purview of Heading

4820.  It appears to the court that the inserts cause little, if any, change to the nature of the binder

itself, and the court is therefore troubled by Customs's failure to explain the significance of the

inserts in classifying such goods, particularly where similar inserts may be added to the binder by

the consumer.[27]

Customs's method for classifying goods comprised of two or more components is also

incoherent, as there is some evidence that Customs does not always use GRI 3(b) to classify

composite goods.  *See Modification of the Legal Analysis Contained In A Ruling Letter*

*Concerning the Classification Of "Polacolor Foil"*, 43 Cust. B. & Dec. 22, 2008 WL 5481673

(Dec. 17, 2008) ("*Polacolor Foil Modification*"); *Protest 0201-96-100158; Polacolor Foil;*

*Polypropylene/Aluminum/Polypropylene Laminate; Subheading 3921.90-40 and 7607.20.50*

*(EN); General Explanatory Note to Chapter 39; Explanatory Note 39.21; Other plate, sheets,*

*film, foil and strip, of plastics; Aluminum Foil*, HQ 959298 (May 8, 1998) ("*HQ 959298*").

Specifically, Customs recently modified the legal analysis employed in its original Polacolor Foil

ruling, wherein it used GRI 3(b) to classify a composite product of foil and plastic under Heading

3921.  *See HQ 959298*s at 2.  In the modified ruling, Customs not only acknowledges that ENs

"provide a commentary on the scope of each heading of the HTSUS and *are generally indicative*

---

[27] The issue of inserts also arises in the case at hand.  Although the subject merchandise
was imported without any inserts, it is "dedicated to the organization and use of stationery items,
specifically six and seven hole sheets of paper, or paper inserts, including note pads, calendars,
diaries, agendas, and address books, *which are to be added by Global's customers after*
*importation and/or by the ultimate purchaser of the binder*."  Pl. Br. Ex. 1 ¶ 3 (emphasis added).

*of the proper interpretation of these headings* at the international level," *Polacolor Foil*

*Modification* at 4 (emphasis added), but also finds that

> composite goods consisting in part of plastic sheets or other forms named in the heading may be classified in heading 3921, HTSUS, *on the basis of GRI 1*, provided they retain the essential character of articles of plastics. This *interpretation of the heading text is supported by the [EN]s* to heading 3921, HTSUS. *See* EN 39.21 and the General EN to Chapter 39, which explains that sheets of plastics separated by a layer of foil are provided for in Chapter 39.

*Id.* at 5 (emphases added). This modified analysis demonstrates Customs's own understanding

that even with composite goods, an essential character analysis pursuant to GRI 3(b) is not

appropriate where the ENs specifically provide for an exception and allow for classification

pursuant to GRI 1.

Thus, having examined the record and noted erroneous assumptions, as well as a number

of inconsistencies in Customs's classification analyses and application of the GRIs, the court

holds that Customs's classification of the subject merchandise in this case is not persuasive and

therefore not entitled to *Skidmore* deference.

## IV. Conclusion

For the aforementioned reasons, the court finds that because the merchandise at issue are

binders of paper or paperboard, classification under Heading 4820 is mandated by the Federal

Circuit's decision in *Avenues in Leather* and the language of the relevant Explanatory Notes.

Therefore, the Government's Motion for Summary Judgment is denied, except for dismissal of

all claims related to Model Nos. 18687 and 28471. Global's Motion for Summary Judgment is

granted, as the proper classification of the binders is under HTSUS 4820.30.00.

Dated:    April 23, 2009                          /s/ Judith M. Barzilay
          New York, NY                            Judith M. Barzilay, Judge

Slip Op. 09-33

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
:
GLOBAL SOURCING GROUP, INC.,              :
:
        Plaintiff,              :
:     Before: Judith M. Barzilay, Judge
     v.              :     Court No. 05-00405
:
UNITED STATES,              :
:
        Defendant.              :
———————————————————:

## **JUDGMENT**

Upon consideration of the briefing filed by Plaintiff Global Sourcing Group, Inc.

("Global") and Defendant United States (the "Government"), the court's opinion in this action on

April 23, 2009, and all other papers filed in this civil action, it is hereby:

**ORDERED** that the Government's Motion for Summary Judgment is DENIED, except

for dismissal of all claims related to Model Nos. 18687 and 28471; and it is further

**ORDERED** that Global's Motion for Summary Judgment is GRANTED, as the proper

classification of the binders is under HTSUS 4820.30.00.

Dated:  April 23, 2009                     /s/ Judith M. Barzilay      
       New York, NY                       Judith M. Barzilay, Judge

Slip Op. 09-33

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                    :
GLOBAL SOURCING GROUP, INC.,        :
                                    :
          Plaintiff,                :
                                    :          Before: Judith M. Barzilay, Judge
          v.                        :          Court No. 05-00405
                                    :
UNITED STATES,                      :
                                    :
          Defendant.                :
_____:

### **JUDGMENT**

Upon consideration of the briefing filed by Plaintiff Global Sourcing Group, Inc.

("Global") and Defendant United States (the "Government"), the court's opinion in this action on

April 23, 2009, and all other papers filed in this civil action, it is hereby:

**ORDERED** that the Government's Motion for Summary Judgment is DENIED, except

for dismissal of all claims related to Model Nos. 18687 and 28471; and it is further

**ORDERED** that Global's Motion for Summary Judgment is GRANTED, as the proper

classification of the binders is under HTSUS 4820.30.00.


Dated:  April 23, 2009_____              /s/ Judith M. Barzilay_____
          New York, NY                         Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk